## Richardson v. Commonwealth.

(Decided October 21, 1924.)

Appeal from Daviess Circuit Court.

1. Searches and Seizures—Constitutional Right Against Search and Seizure May be Waived.—One who consents to search of his premises waives his constitutional right against search and seiz-

ure, even though he at first refuses to consent, and only consented in consideration of certain privileges.

2. Criminal Law—Evidence Obtained Without Search Warrant Held Admissible.—Where owner of premises consents to search without warrant, evidence obtained is competent upon trial for violation of prohibition laws.

3. Intoxicating Liquors—Officers May Search Premises Outside of Curtilage Without Warrant.—Officers may without warrant search lands of one suspected of violation of prohibition laws, provided search does not include buildings and is not within curtilage.

4. Intoxicating Liquors—Premises 350 Yards from House Could be Searched Without Warrant.—Hog lot 350 yards from house could be searched without search warrant by prohibition officers.

5. Intoxicating Liquors—One Cannot Complain of Discovery of Still Upon Lands of Another Without Warrant.—Defendant cannot complain of search by prohibition officers without warrant of premises of another.

6. Criminal Law—Evidence Not Inadmissible Because Search was Begun Within Curtilage.—That officers without warrant began search of defendant's premises within curtilage, in violation of Constitution, section 10, does not render inadmissible evidence of matters discovered outside of curtilage.

T. F. BIRKHEAD for appellant

FRANK E. DAUGHERTY, Attorney General, MOORMAN DITTO, Assistant Attorney General, GLOVER H. CARY, Commonwealth's Attorney, and WILBUR K. MILLER, County Attorney, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—Affirming.

Appellant Richardson complains of his conviction in the Daviess circuit court on an indictment accusing him of unlawfully manufacturing spirituous, vinous, malt and intoxicating liquors for other than the purposes allowed by law, and in fixing his punishment at a fine of $250.00 and sixty days in the county jail. Appellant was a farmer residing some miles from town. He lived alone. Some 300 yards from his house was a field of seven or eight acres in which he had a number of hogs. Still nearer his house was a barn where he kept horses and other stock. Late one evening when he was having some work done on his chimney a bunch of prohibition officers drove up and were entering his yard when he discovered them, and thinking they were cattle buyers approached them and began to apologize for the condition of his house. On being informed that his visitors were prohibition officers and desired to search his place,

he asked them if they had a search warrant, to which they answered they did not. He then said they could not search. Thereupon one of the prohibition officers told appellant that they could lawfully search his farm outside of his house and buildings and that they were going to do that, but that they would not search his house unless he consented for them to do so. After some conversation the prohibition officers requested appellant to come and go with them out on the farm and, without searching the house, they went through the yard, by the barn and down toward the hog lot. There they found two barrels of mash fermenting. After destroying the mash one of the officers followed a path from the barrels up a slope towards a fence, looking for the still. As he did this appellant announced that the fence was his line and if they found a still beyond that fence it was not his. A few feet beyond the fence the officer found a still hidden in a briar patch. It was not set up although the worm and all parts were present. He called appellant and the officers to see it. They carried it to the house and destroyed it. Then they told appellant that they would have to take him with them as a prisoner; that they would like to search his house but would not do so without a warrant unless he consented to the search. He finally proposed to the officers that if they would allow him to remain there long enough to feed his stock that he would allow them to search his house. This was agreed upon. They went into the house with appellant and he pulled out a box from under the table and took from it a small quantity of whiskey which he gave to the officers with the announcement that it was all there was on the place. What further search was made is not definitely shown by the evidence. Later they took appellant to Owensboro where he was confined until next day.

He earnestly insists, through counsel, that the evidence obtained by the officers was incompetent against him because the officers had no search warrant authorizing a search of his house and premises. Inasmuch as he consented to the search of his house he is in no position to complain of that for we have written in several cases that one may waive his constitutional right against search and seizure and allow officers to proceed with a search in the absence of a warrant, and evidence obtained in such manner is competent upon a trial for a violation of the prohibition laws. Gray v. Commonwealth, 198 Ky. 610.

It is a well established rule in this state that officers may search the lands of one suspected of a violation of the prohibition laws provided the search does not include the buildings and is not within the curtilage. We have not, however, defined with exactness the space around one's dwelling and other buildings upon which a search cannot be made without a warrant so to do. In one case we held that a pond within a stone's throw of the residence was within prohibited territory and not subject to search. Childers v. Commonwealth, 198 Ky. 848. In another case that the yard and garden nearby were exempt from search by prohibition officers. Ingram v. Commonwealth, 200 Ky. 284, and Brent v. Commonwealth, 194 Ky. 504.

In the case of Mattingly v. Commonwealth, 197 Ky. 583, we held an officer could not peer in at the window of a residence and thus discover contraband whiskey without rendering his testimony inadmissible. See also Jordan v. Commonwealth, 199 Ky. 331. In the case of Cotton v. Commonwealth, 200 Ky. 349, we said:

"While we have never attempted an exact definition of the word 'possession,' we held in Brent v. Commonwealth, 194 Ky. 504, that it does not have the broad meaning for which appellant contends, or apply to the searching of woodland located somewhat remotely from his residence, but refers rather to the intimate things about one's person, like in kind to those previously denominated, and must be construed in connection with those previous words 'houses' and 'papers.' "

In the case under consideration the officers refused to search the house and buildings against the consent of appellant and without a warrant so to do, but they went down through the premises some 300 yards from the house, and entering a hog lot or field containing seven or eight acres, there discovered two barrels of mash fermenting. This field of seven or eight acres was not, as we believe, exempt from search by the prohibition officers. It was not directly connected with the residence or curtilage of appellant. The field was a long distance from the house and we can think of no reason why a field located at such a distance from the residence and occupied by hogs should be exempt from search, for certainly it could not be supposed that appellant kept any of his private papers in that field or that one entering therein would have an opportunity to spy on the occupant of the

house and curtilage. Nothing was found on the farm nearer the house than the two barrels of mash. The still which was found upon adjoining lands was at the end of a path which led from the barrels of mash. Appellant cannot complain of the search and discovery of the still upon the lands of another. Bowling v Commonwealth, 193 Ky. 643; Weber v. Commonwealth, 202 Ky. 499.

If it be admitted that the officers began the search of appellant's premises within the curtilage and so near the house as to violate the rights of appellant guaranteed him by the 10th article of our Constitution, yet the evidence heard on the trial was competent, and the court properly admitted it because it did not relate to or prove the discovery of a still, mash or whiskey, or other incriminating fact within such radius. All that was found of an incriminating nature was clearly beyond the limits of the yard and garden protected by the Constitution as construed by this court.

As appellant consented to the search of his house by the officers he cannot complain that they discovered liquor therein. His consent to the search was a waiver of a warrant for that purpose. Howard v. Commonwealth, 197 Ky. 297; Smith v. Commonwealth, 197 Ky. 192. This is true even though he had first refused to allow them to search, but finally made a proposition which resulted in an agreement to allow them to search his premises if the officers would allow him certain privileges. It was a mutual affair and resulted from his own suggestion.

After a careful review of the record we are thoroughly convinced that the evidence given by the officers was competent and that the appellant obtained a fair, trial. The judgment must, therefore, be affirmed.

Judgment affirmed.