**William Thomas GRAVES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 48720.**

Court of Criminal Appeals of Texas.

July 24, 1974.

Rehearing Denied Sept. 18, 1974.

58

Tom A. Boardman, Lawrence B. Mitchell, Dallas, for appellant.

Henry Wade, Dist. Atty., Richard W. Wilhelm, Asst. Dist. Atty., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

JACKSON, Commissioner.

The conviction was for the possession of heroin, a narcotic drug; the punishment, assessed by the jury, was for life.

The sufficiency of the evidence is not challenged.

In his first ground of error, appellant contends that the trial court erred in admitting in evidence seven capsules of heroin and two syringes taken from the automobile being driven by him, because he says the search and seizure were illegal and without probable cause.

■ On the day of the trial, the court conducted a hearing on appellant's motion to suppress this evidence, and overruled it. The State contends that the question of the legality of the search and seizure is not before us for review because when the evidence was offered by the State the appellant did not object to its introduction. Since the trial court had immediately before overruled the motion to suppress, it was not necessary for appellant to object when the contraband was offered. Powers and Dion v. State, Tex.Cr.App., 456 S.W. 2d 97; Art. 40.09, Sec. 6(d)(3), Vernon's Ann.C.C.P.

On the motion to suppress, the facts before the court were:

On April 4, 1973, Officer Fowler of the Dallas Police Department, received information from a confidential informant that one Richard who was described had a quantity of heroin in his apartment at 1943 Akron Street in Dallas, Apartment No. 7; that the informant had been in this apartment within the past 24 hours, saw Richard sell heroin and saw about 50 capsules of heroin in a glass bottle, which Richard placed in his trousers pocket; that the informant was reliable, trustworthy and credible, and, based upon other information furnished by him, eight other cases had been filed upon for violation of the narcotic laws; that other narcotic officers had also informed Fowler that Richard was dealing in narcotics.

Based upon Fowler's affidavit, a search warrant was issued by a magistrate to search the apartment and to arrest Richard and other persons unknown.

Testifying further, Fowler said:

"BY MR. BANKS: (Prosecutor)

"Q Detective Fowler, can you tell the Court in connection with this information you received regarding the heroin that's stated there in the affidavit and search warrant if you had received any information regarding any vehicles in connection with that heroin?

"A Yes, sir, I did.

"Q Tell the Judge about that, please.

"A. Yes, sir, I received information that the person named William Graves, driving a yellow 1966 Chrysler—and best of my memory the license number was KSD705, that they had been to San Antonio or he had taken a group of people to San Antonio that lived at this residence and had gotten back earlier in the morning of April 4th, had made a trip specifically to pick up heroin and that they had brought it back to this apartment.

"Q The vehicle you had described, was specifically described to you as the one transporting the heroin?

"A That's correct?

"Q Can you tell us whether or not when you went to execute the search warrant whether or not you were looking for that vehicle or had information that the vehicle would be there at the apartment so you could tell if the apartment was occupied?

"A Yes, sir, the information I received was that there would be an Electra Buick parked at this apartment and that this Buick had been left at the apartment while they went to San Antonio in this man's Chrysler and not to run the search warrant unless the Chrysler was there.

"Q When you got back to the apartment with the search warrant, about what time was that?

"A Around 2:30 in the afternoon.

"Q Was the Chrysler there? This would be on the 4th day of April, is that right?

"A Yes, sir.

"Q Did you then begin a surveillance of the apartment that you talked about there on Akron Street?

"A Yes, sir, the Buick was there, but the Chrysler was not. We placed the apartment under surveillance.

"Q In the course of that surveillance can you tell the Judge whether the Chrysler returned?

"A Yes, sir, it did.

"Q And could you tell if the defendant was in it at that time?

"A Yes, sir.

"Q What was he doing?

"A He was driving the car.

"Q Was he by himself or were there other people in it?

"A There were other people in it.

"Q More than one?

"A Yes, sir.

"Q What did you see those people do?

"A The Chrysler pulled in front of the apartment. Everybody got out. There were approximately four people in the car. They got out of the car and went into this particular apartment.

"Q Did they stay in there very long or come out shortly thereafter?

"A Mr. Graves and another man came back out after being in there approximately four to five minutes.

"Q Four to five minutes?

"A Yes, sir.

"Q Okay. At that time did they get into the Chrysler and leave from the apartment?

"A Yes, sir, they did.

"Q Okay. Now, did you then attempt to stop the Chrysler to see whether or not the heroin was still in the Chrysler?

"A Yes, I did."

After obtaining the search warrant for the premises, Fowler and other officers set up a surveillance near the premises. After about two hours appellant with other passengers arrived in the yellow 1966 Chrysler, all got out and went into the apartment, and in about 5 minutes appellant and another man got in the yellow Chrysler and drove off. Fowler, accompanied by other officers, stopped the Chrysler being driven by appellant. Upon request, appellant and the other occupant got out of the car, and in plain view Fowler saw the capsules of heroin and the two syringes in a plastic container in the floorboard of the car on the driver's side. They took possession of the contraband and arrested appellant and the other occupant.

Fowler further testified that, from the information he had, he believed that heroin was in the car when he stopped it, and that he considered his informant reliable.

No search warrant was obtained for the Chrysler automobile. The appellant did not testify either upon the motion to suppress or at the trial.

When the officers executed the search warrant upon the premises described they found a quantity of heroin and syringes,

and they also found heroin and a syringe upon the person of Dottie Dean Davis after she ran out of the house.

■ Probable cause to search exists where the facts and circumstances within the knowledge of the officer on the scene and of which he has reasonably trustworthy information would lead a man of reasonable caution and prudence to believe that he will find the instrumentality of a crime or evidence pertaining to a crime. Jones v. State, Tex.Cr.App., 493 S.W.2d 933.

■ With the information in his possession, it was reasonable for Officer Fowler to conclude that the automobile which was being used to haul heroin probably still had heroin in it, and since it was then leaving the premises where he was reliably informed there was heroin it would not have been practical for the officers to obtain a search warrant. Therefore, we conclude that the stopping of the automobile and the discovery of heroin in plain view was with probable cause and under exigent circumstances. Chambers v. Maroney, 399 U.S. 42; 90 S.Ct. 1975, 26 L.Ed.2d 419; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L. Ed. 1879.

We overrule ground of error number one.

In his second ground of error, appellant urges that the court erred in overruling his "objection to the admission of evidence in that such was irrelevant to any issue in the case." His complaint is directed to evidence showing that other people were present in the apartment and that pursuant to the search heroin and syringes were found in the apartment.

During the trial his objection to such testimony was:

". . . Object to any testimony concerning what happened subsequent to the arrest of the defendant as being irrelevant and immaterial to the cause now on trial."

■ The admission of the evidence was proper as a part of the circumstances surrounding the search and appellant's arrest. Cherry v. State, 479 S.W.2d 924 (Tex.Cr. App.1972) and Wright v. State, 168 Tex. Cr.R. 645, 330 S.W.2d 620 (1959).

Ground of error number two is overruled.

■ Appellant contends the trial court erred in overruling his objection to the argument of the prosecution to the effect, "It's a reasonable deduction from the evidence that they're waiting on the source of supply sitting right over here in his yellow Chrysler." His complaint is to the allusion that appellant was the "source of supply."

We conclude that it was a reasonable deduction from the evidence. The record establishes that the appellant was arrested in his yellow Chrysler which contained heroin. See Lewis v. State, 504 S.W.2d 900 (Tex.Cr.App.1974).

Ground of error number three is overruled.

Next appellant complains of the prosecutor's argument classifying him as a dealer of narcotics and his argument about the "little white substance that causes so much death and destruction." Appellant's objection to the arguments was sustained, the jury was instructed to disregard the remarks, but his motions for mistrial were overruled.

This Court stated in Hodge v. State, 488 S.W.2d 779 (Tex.Cr.App.1972):

"The question as to whether either of the statements of counsel necessitates a reversal of the judgment is to be resolved on the basis of the probable effect on the minds of the jurors and the facts of each case must be looked to. Jett v.

**62**

State, Tex.Cr.App., 489 S.W.2d 101 (1972); Hess v. State, Tex.Cr.App., 168 Tex.Cr.R. 425, 328 S.W.2d 308.

"An instruction by the court to the jury to disregard improper remarks of counsel is ordinarily held to overcome any harm or prejudice caused by the argument unless the remarks are so inflammatory that their prejudicial effect could not reasonably be removed by such an admonition. Hoover v. State, Tex.Cr.App., 449 S.W.2d 60. See 56 Tex.Jur.2d, Trial, Section 326, page 687."

■ We hold that under the facts and circumstances of the instant case the argument was not so inflammatory that any prejudicial effect could not be removed by the instruction given by the court.

Ground of error number four is overruled.

■ In his last ground of error appellant urges that the trial court erred in overruling his motion for a mistrial because of a statement of the District Attorney during his voir dire examination of the jury. The voir dire examination was not transcribed and made a part of the record on appeal. As stated by this Court in Guerrero v. State, 487 S.W.2d 729 (Tex. Cr.App.1972):

"The entire voir dire examination must be brought before this court in order to enable us to ascertain whether error has been shown. See, e. g., Wood v. State, Tex.Cr.App., 486 S.W.2d 771 (1972); Longs v. State, Tex.Cr.App., 429 S.W.2d 157. McCullough v. State, Tex.Cr.App., 425 S.W.2d 359."

This ground of error is overruled.

We have considered all grounds of error and find them to be without merit.

The judgment is affirmed.

Opinion approved by the Court.