IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1454-12







HEATHER THOMAS, Appellant


 v.


THE STATE OF TEXAS






ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

FROM THE SEVENTH COURT OF APPEALS

POTTER COUNTY




 Price, J., delivered the opinion for a unanimous Court.


O P I N I O N


 The appellant was convicted of the second degree felony offense of possession of
marijuana in an amount between fifty and two thousand pounds. (1) She initially preserved
error by way of a motion to suppress the evidence, which she claimed had been seized during
the course of an illegally prolonged roadside detention. But when that evidence was later
proffered by the State during the punishment portion of the unitary proceeding following her
non-negotiated plea of guilty to the charge, her attorney expressly declared that he had "no
objection" to the admission of the evidence. The trial court nevertheless manifested its
understanding that the appellant persisted in her wish to appeal the denial of her pretrial
motion to suppress and expressly granted her permission to do so. The court of appeals
nevertheless refused to reach the merits of her claim, relying upon longstanding precedent
from this Court to hold that her attorney had "waived" the previously preserved objection to
the evidence for purposes of appeal when he declared that he had "no objection" to its
admission. (2) We granted the appellant's petition for discretionary review in order to examine
the propriety of this holding on the particular facts of this case. We will reverse.

FACTS AND PROCEDURAL POSTURE

 On March 29, 2009, Texas Department of Public Safety Highway Patrolman Enoi
Phoutthavong stopped the appellant, who was traveling east on Interstate 40 in Potter County. 
At a pretrial motion to suppress hearing, Phoutthavong testified that he pulled the appellant
over because she crossed the white fog line several times. (3) During the stop, he noticed that
the appellant was very nervous and that her hands were visibly shaking. The car the
appellant was driving was a one-way rental, and she had very little luggage, further raising
his suspicion. After handing the appellant a warning ticket, Phoutthavong asked permission
to search her trunk, but the appellant refused. Phoutthavong then called for the assistance
of a DPS drug canine unit, detaining the appellant for about five minutes until the canine unit
arrived. Once at the scene, the dog alerted to the presence of drugs in the trunk, and upon
opening the trunk, the officers found 227 pounds of marijuana concealed under a blanket.

 The appellant claimed that she was improperly detained to await the arrival of the
canine unit. After hearing testimony, the trial court denied the motion to suppress. (4) The next
day, the appellant pled guilty and signed a judicial confession without a sentencing
recommendation. The record contains several documents pertaining to the appellant's right
to appeal. First, the appellant signed a general plea-admonishment form that included
boilerplate language that stated that she was waiving, among other rights, her right to appeal. 
Second, the record contains a separate form document that was specifically dedicated to
waiver of the right to appeal. But the appellant did not sign this dedicated waiver. Finally,
the appellant also signed the trial court's certification of her right of appeal, pursuant to Rule
25.2, Subsections (a)(2) and (d), of the Texas Rules of Appellate Procedure, (5) indicating that,
because her plea of guilty was not pursuant to a plea bargain, the appellant retained the right
to appeal.

 After the appellant was admonished and pled guilty to the indictment in open court,
the trial court found the evidence sufficient to support her guilty plea. (6) The trial court then
adjourned for a lunch break. During the punishment portion that commenced after lunch, the
State offered into evidence State's Exhibits 1 through 9, which were some of the evidence
challenged in the suppression hearing the day before. The appellant's trial counsel stated:
"I don't have any objection to that, Your Honor. [The State] has been kind enough to let me
see them before this afternoon and we have no objections." Exhibit 1 was a laboratory
analysis establishing the substance to be marijuana, and Exhibits 2 through 9 were
photographs of the marijuana. The trial court admitted the exhibits and sentenced the
appellant to 6 and a half years' confinement in the penitentiary and a fine of $2,500. 
Immediately after sentencing the appellant, the trial court informed her of her right to appeal
both its ruling on her motion to suppress as well as its assessment of her punishment. (7) At
that time, the appellant gave oral notice of appeal, to which the trial court responded: "And
I presume the princip[al] issue for appeal is the issue of the Court's decision on your motion
to suppress?" (8) Commenting that his ruling on the motion had been a "close call," the trial
judge then set bail for appeal.

 The court of appeals refused to consider the merits of the appellant's motion to
suppress, observing that the appellant had affirmatively stated that she did not object to the
admission of evidence previously challenged in the suppression hearing and holding that this
statement waived any error previously preserved. (9) In dissent, however, Justice Pirtle urged
the majority not to "abandon common sense in favor of mechanical application of that
principle." (10) Justice Pirtle argued that the rule should not be categorically applied, noting
that other courts of appeals have declined to follow it when the trial court makes
representations on the record that make it clear it did not regard the "no objection" statement
to constitute a waiver under the circumstances of the particular case. (11) In Justice Pirtle's
view, it was clear in the instant case that the trial court did not believe it was the appellant's
intent to waive her right to contest the trial court's ruling on her pretrial motion to suppress
on appeal and did not regard trial counsel's "no objection" statement to be a waiver under
the circumstances. (12) We granted the appellant's petition for discretionary review to address
this disagreement among the justices in the court of appeals. (13)

THE ISSUE

 An adverse ruling on a pretrial motion to suppress evidence will ordinarily suffice to
preserve error on appeal, and a defendant need not specifically object to the evidence when
it is later offered at trial. (14) But he must also take care not to affirmatively indicate that he has
"no objection" to the evidence that he challenged in his pretrial motion to suppress when it
is later offered at trial, for this Court has long held that such an affirmative statement
constitutes a "waiver" of the right to raise on appeal the error that was previously preserved. (15) 
Although this waiver principle has come under some criticism, the appellant does not argue
today that we should abolish it--only that we should qualify it, just as several of the lower
appellate courts in Texas have done. (16) As Justice Pirtle pointed out in his dissenting opinion
below, (17) several courts of appeals have identified circumstances under which they have
deemed it appropriate to deviate from the principle that a statement of "no objection" at trial
will serve to "waive" an earlier-preserved claim of error in failing to grant a motion to
suppress. The appellant maintains that her case presents such circumstances.

 Justice Pirtle identified two specific cases. First, in Bouyer v. State, the defendant
filed a motion to suppress evidence obtained by police when they entered his hotel room
without a warrant and, he claimed, without exigent circumstances to excuse its absence. (18) 
But Bouyer failed to request a pretrial hearing on his motion to suppress, and none was
held. (19) When the State later offered the evidence at his jury trial, Bouyer reminded the trial
court that he had challenged it in an earlier motion to suppress. (20) The trial court expressed
an unconventional preference to defer a hearing on the motion to suppress until after the
evidence was admitted, however, promising to instruct the jury not to consider it should the
evidence later be deemed inadmissible. (21) With that understanding, Bouyer stated that he had
"no objection" to the introduction of the evidence, notwithstanding his extant motion to
suppress. (22) When the trial court later convened an evidentiary hearing on the motion to
suppress, the State objected to the hearing, arguing that Bouyer had waived his challenge to
the admissibility of the evidence by affirmatively stating he had "no objection" to it when it
was offered into evidence. (23) The trial court nevertheless conducted the evidentiary hearing
and denied the motion to suppress on the merits. (24) Recognizing that a "no objection"
statement usually will waive preservation of an adverse pretrial ruling, the Fourth Court of
Appeals nevertheless held that Bouyer's claim was preserved for appeal under the "unique"
circumstances presented. (25) "By holding the suppression hearing over the State's 'waiver'
objection," the Bouyer court reasoned, "the trial court clearly did not construe Bouyer's 'no
objection' as a waiver of his motion to suppress." (26)

 The second case that Justice Pirtle cited was Shedden v. State, from the Thirteenth
Court of Appeals. (27) Shedden filed a pretrial motion to suppress evidence that he claimed was
the product of an illegal arrest. The trial court overruled the motion after a pretrial hearing. (28) 
At trial, Shedden declared that he had "no objection" to the evidence he had previously
challenged in the suppression motion, but he later clarified that he had not intended thereby
to waive preservation of his complaint for appeal. (29) "The trial court then expressly
represented to Shedden's counsel that it considered the suppression issue preserved for
appeal." (30) Relying upon Bouyer, and observing that the trial court had not been misled by
the appellant's "no objection" statement into thinking that he had intended to abandon his
suppression issue for appeal, the court of appeals held that it was preserved and proceeded
to address the merits. (31) In the instant cause, we must determine whether such deviations from
the general principle are ever appropriate, (32) and, if so, whether Justice Pirtle is correct that
deviation is appropriate on the particular facts of this case.

ANALYSIS

Is the Rule Categorical?

 The question in this case is not whether error has been preserved. The appellant
obtained an adverse ruling on her pretrial motion to suppress, and nothing more is necessary
to permit her to raise that adverse ruling on direct appeal. Instead, the question is whether,
having once preserved her appellate claim of error in this manner, the appellant took some
affirmative action later that served to forfeit it. Our case law makes it clear that a statement
of "no objection" when the complained-of evidence is eventually proffered at trial--at least,
without more--will signal to the trial court an unambiguous intent to abandon the claim of
error that was earlier preserved for appeal. But what if there is more to the appellate record
than a bare statement of "no objection"? What if that "more" suggests that an abandonment
of the earlier-preserved claim of error was not what trial counsel intended? Should appellate
courts nevertheless invoke the rule that the "no objection" statement constitutes a "waiver"
of error? Error preservation, we have often insisted, is not an inflexible concept. (33) We
believe a rule that says carefully preserved error can nonetheless be abandoned for appeal
should not apply mechanically either.

 In Lankston v. State, we cautioned:

 The standards of procedural default . . . are not to be implemented by splitting
hairs in the appellate courts. As regards specificity [of an objection], all a
party has to do to avoid the forfeiture of a complaint on appeal is to let the trial
judge know what he wants, why he thinks himself entitled to it, and to do so
clearly enough for the judge to understand him at a time when the trial court
is in a proper position to do something about it. (34)


We have extended this concept even so far as to hold that a party need not state his objection
with specificity in order to preserve error so long as the record otherwise makes it clear that
both the trial court and the opposing party understood the legal basis. (35) After all, the reason
that any objection must be specific in the first place is so that the trial court can avoid the
error or provide a timely and appropriate remedy, and the opposing party has an opportunity
to respond and, if necessary, react. (36) So long as it appears from an appellate record that these
policies have been satisfied, it should not matter to the appellate court whether the objecting
party used a particular "form of words"--or any particular words at all, if meaning is
adequately conveyed by context. (37)

 We see no principled reason why appellate courts should not apply the "no objection"
waiver rule with comparable flexibility. Particularly when a defendant has taken pains to file
a pretrial motion to suppress, develop testimony at a hearing, and secure an appealable
adverse ruling, it is unrealistic to presume that he would lightly forego the opportunity to
vindicate his interests on appeal. Moreover, the policies that undergird error preservation
have already been satisfied during the litigation on the motion to suppress. The trial court
was given every opportunity to grant the motion, if appropriate, and the State was notified
that it need not seek out alternative evidence in support of a conviction. No purpose is served
by insisting that earlier-preserved error is abandoned by a later statement of "no objection"
when the record otherwise establishes that no waiver was either intended or understood.

 None of this is to say, of course, that a defendant's bare statement of "no objection"
when the evidence that was the subject of the motion to suppress is subsequently offered at
trial could never signal an intention to abandon earlier-preserved error for appeal, or at least
mislead a trial judge into believing so. (38) Perhaps upon reflection the defendant has assessed
his chances of success on appeal to be negligible given the evidence produced during the
evidentiary hearing; or perhaps, as the State argues, he is satisfied with the punishment he
has negotiated with the prosecutor or that he anticipates the judge or jury will impose. But
neither contingency is likely enough to justify the absolute and unforgiving application of a
rule that any subsequent statement of "no objection" will operate to forfeit a claim of error
that has already been assiduously preserved--regardless of the attendant circumstances.

 We therefore hold that, as with error preservation in general, the rule that a later
statement of "no objection" will forfeit earlier-preserved error is context-dependent. By that
we mean that an appellate court should not focus exclusively on the statement itself, in
isolation, but should consider it in the context of the entirety of the record. If the record as
a whole plainly demonstrates that the defendant did not intend, nor did the trial court
construe, his "no objection" statement to constitute an abandonment of a claim of error that
he had earlier preserved for appeal, then the appellate court should not regard the claim as
"waived," but should resolve it on the merits. On the other hand, if from the record as a
whole the appellate court simply cannot tell whether an abandonment was intended or
understood, then, consistent with prior case law, it should regard the "no objection" statement
to be a waiver of the earlier-preserved error. Under the latter circumstances, the affirmative
"no objection" statement will, by itself, serve as an unequivocal indication that a waiver was
both intended and understood.

Application of the Rule in This Case

 The record as a whole in this case plainly demonstrates that neither the appellant nor
the trial court regarded her "no objection" statement as an abandonment of her claim that the
trial court erred to deny her pretrial motion to suppress. At the conclusion of the punishment
hearing, the trial judge went to some length to admonish the appellant of her right to appeal,
even commenting that he presumed that his adverse ruling on her motion to suppress would
constitute the "princip[al]" issue on appeal, and remarking that he regarded that ruling as a
"close call" before setting her appellate bond. Neither the appellant nor the prosecutor took
issue with these remarks. No error-preservation policy would be undermined by allowing
the appellant to appeal the adverse ruling on her pretrial motion to suppress under these
circumstances, since the trial court and both parties obviously expected that she would. We
therefore agree with Justice Pirtle that the court of appeals majority's categorical application
of the "no objection" waiver rule was inappropriate. (39)

The Boilerplate Waiver of Appeal 

 In its brief on discretionary review and during oral argument, the State points to the
appellant's boilerplate waiver of appeal as some evidence that, when the appellant announced
"no objection" to the evidence at the punishment hearing, she in fact intended to abandon
appellate review of the adverse ruling on her motion to suppress. (40) We disagree that, on the
facts of this case, the boilerplate waiver supports a reasonable inference that the appellant
intended, or that the trial court thought she intended, to abandon her motion to suppress
claim. In Willis v. State, the defendant signed a similar boilerplate waiver of appeal as part
of a negotiated plea bargain, but he nevertheless filed a notice of appeal pursuant to the trial
court's subsequent permission to do so. (41) The State failed to assert any claim on appeal that
Willis's boilerplate waiver should block his appeal. (42) On those facts, we found that "the
language waiving appeal in the plea forms was an oversight." (43) Observing that "the trial
court is in a better position to determine whether the previously executed waiver of appeal
was in fact validly executed[,]" we held that "the trial court's subsequent handwritten
permission to appeal controls over a defendant's previous waiver of the right to appeal,
allowing the defendant to appeal despite the boilerplate waiver." (44) Accordingly, we
remanded the cause for consideration of the merits of Willis's pretrial motion to suppress. (45)

 The record in the instant case presents even less compelling facts than those in Willis
to justify the conclusion that, by signing the boilerplate waiver of appeal, the appellant
manifested any genuine intention to abandon her pretrial suppression claim. Unlike the
defendant in Willis, the appellant here did not even plead guilty as part of a negotiated plea
bargain. She gained nothing in the way of a favorable punishment recommendation by
abandoning her right to appeal. What is more, she conspicuously failed to sign the separate
dedicated waiver of appeal. Waiver of appeal was not among the matters that the trial court
orally reviewed with her during the course of the plea colloquy. (46) Neither party objected later
when the trial court admonished the appellant at the conclusion of the punishment portion
of the proceedings that, in light of the non-negotiated status of her guilty plea, she would be
allowed to appeal any matter including the adverse ruling on her motion to suppress. (47) And,
as in Willis, the State neglected to argue to the court of appeals specifically that the
appellant's signature on the boilerplate waiver of appeal operated to deprive her of her right
to appeal. (48) Under these circumstances, we do not regard the appellant's signature on the
boilerplate waiver of appeal to be anything other than inadvertent--an "oversight" (49)--and
certainly less than a knowing and voluntary waiver. It obviously did not mislead the trial
court into believing that the appellant intended to waive her right to appeal, much less that
she meant to forfeit the particular complaint she took pains to litigate in her pretrial motion
to suppress.


CONCLUSION

 Given the record as a whole, the court of appeals erred to conclude that, by stating that
she had "no objection" to the introduction of certain evidence during the punishment portion
of the proceedings in this case, the appellant "waived" appellate review of the propriety of
the trial court's ruling on her pretrial motion to suppress. Accordingly, we reverse the
judgment of the court of appeals and remand the cause to that court for further appellate
consideration of her points of error consistent with this opinion.


DELIVERED: September 25, 2013

PUBLISH 
1. Tex. Health & Safety Code § 481.121(a), (b)(5).
2. Thomas v. State, No. 07-11-00067-CR, 2012 WL 3762479, at *2 (Tex. App.--Amarillo,
delivered Aug. 30, 2012) (not designated for publication).
3. In its written findings of fact and conclusions of law, the trial court would later determine that
these observations gave Phoutthavong authority to detain the appellant for the offense of driving on
an improved shoulder. Tex. Transp. Code § 545.058. Because of its holding that the appellant
waived any objection to the admission of evidence that was a product of the detention, it did not
address the merits of this determination.
4. The trial court entered written findings of fact and conclusions of law a week later.
5. Tex. R. App. P. 25.2(a)(2), (d).
6. No express mention was made of the appellant's right to appeal during the plea colloquy. 
After the appellant was admonished as to the applicable range of punishment, she pled guilty. The trial
court then inquired whether there had been a plea agreement. Told that there was not, the trial court
went over the fact that, by signing the plea papers, the appellant was waiving various constitutional
rights including her right to a jury trial. But no particular mention was made of the appellant's right
to appeal. Satisfied that the appellant was waiving her rights knowingly and intelligently, the trial
court informed the appellant that, "based on your plea of guilty and the judicial confession which you
have signed in this matter, I am going to find that the evidence is sufficient to show that you are guilty
of the offense with which you were charged in this matter[.]"
7. The trial court told the appellant:


 Ms. Thomas, you do have a right of appeal. I think you understood that from
the paperwork that you were presented and the paperwork that you signed, but I need
to admonish you again that you do have that right to appeal in both with respect to the
decisions of this Court regarding prior matters and of course with respect to the
sentence the Court has imposed.
8. The appellant could presumably appeal the denial of her motion to suppress, notwithstanding
the judicial confession accompanying her non-negotiated plea of guilty. See Young v. State, 8 S.W.3d
656, 666-67 & n.32 (Tex. Crim. App. 2000) ("Whether entered with or without an agreed
recommendation of punishment by the State, a valid plea of guilty . . . 'waives' or forfeits the right to
appeal a claim of error only when the judgment of guilt was rendered independent of, and is not
supported by, the error. * * * Even though a guilty plea was accompanied by a judicial confession,
a judgment is not independent of a ruling that admitted evidence in error.").
9. The majority opinion held:


 When an accused affirmatively asserts at trial that he has no objection to admission of
the complained-of items of evidence, he waives any error in its admission. See Jones
v. State, 833 S.W.2d 118, 126 (Tex. Crim. App. 1992) (en banc); Dean v. State, 749
S.W.2d 80, 83 (Tex. Crim. App. 1988) (en banc). Appellant's waiver includes any
pretrial ruling that may have been previously obtained. See Dean, 749 S.W.2d at 83. 
Appellant's objection having been waived, nothing is presented for review.


Thomas, supra, at *2.
10. Id. (Pirtle, J., dissenting).
11. Justice Pirtle observed:


 The "no objection" waiver doctrine has been disregarded by appellate courts where the
record fairly indicates that the trial judge was not mislead into believing that the
defense was actually waiving or otherwise abandoning the complaint previously made
to the introduction of that evidence. Bouyer v. State, 264 S.W.3d 265, 268-69 (Tex.
App.--San Antonio 2008, no pet.) (trial court held suppression hearing on issue after
counsel said "no objection"); Shedden v. State, 268 S.W.3d 717, 730 (Tex.
App.--Corpus Christi 2008, pet. ref'd) (trial court "expressly represented to
[defendant's counsel] that it considered the suppression issue preserved for appeal"). 
Accord, See 43A GEORGE E. DIX AND JOHN M. SCHMOLESKY: CRIMINAL
PRACTICE AND PROCEDURE § 53:150 (3d ed. 2011) (stating that application of the
principles of waiver or forfeiture are "open to doubt" where defense counsel's "no
objection" statement might well have been intended by counsel to mean that the
defense had no objections beyond those already presented and rejected and the trial
court was not mislead into believing that the defense no longer wished to pursue that
objection).


Id. (Pirtle, J., dissenting).
12. Id. at *3 (Pirtle, J., dissenting).
13. Tex. R. App. P. 66.3(e).
14. E.g., Powers v. State, 456 S.W.2d 97, 98-99 (Tex. Crim. App. 1970) (per curiam); Graves
v. State, 513 S.W.2d 57, 59 (Tex. Crim. App. 1974); Harryman v. State, 522 S.W.2d 512, 516 (Tex.
Crim. App. 1975); Riojas v. State, 530 S.W.2d 298, 301 (Tex. Crim. App. 1975); Ebarb v. State, 598
S.W.2d 842, 843 (Tex. Crim. App. 1979); Moraguez v. State, 701 S.W.2d 902, 904 (Tex. Crim. App.
1986); Gearing v. State, 685 S.W.2d 326, 329 (Tex. Crim. App. 1985), overruled on other grounds
by Woods v. State, 956 S.W.2d 33 (Tex. Crim. App. 1997); Garza v. State, 126 S.W.3d 79, 84 (Tex.
Crim. App. 2004). This statement of the law presumes, of course, that the legal basis for suppression
urged on appeal comports with that which was urged as the legal basis for suppression at the trial court
level. See George E. Dix & John M. Schmolesky, 43A Texas Practice: Criminal Practice and
Procedure § 53:38, at 994 (3rd ed. 2011) (noting "the traditional requirement that the complaint or
issue urged on appeal be the same one which was presented with sufficient specificity to the trial
court").
15. E.g., Boykin v. State, 504 S.W.2d 855, 857 (Tex. Crim. App. 1974); McGrew v. State, 523
S.W.2d 679, 680-81 (Tex. Crim. App. 1975); Mayberry v. State, 532 S.W.2d 80, 83-84 (Tex. Crim.
App. 1976) (opinion on reh'g); Harris v. State, 656 S.W.2d 481, 484 (Tex. Crim. App. 1983); 
Gearing, supra, at 329; Dean v. State, 749 S.W.2d 80, 82-83 (Tex. Crim. App. 1988); Moody v.
State, 827 S.W.2d 875, 889 (Tex. Crim. App. 1992); Jones v. State, 833 S.W.2d 118, 126 (Tex. Crim.
App. 1992); Norris v. State, 902 S.W.2d 428, 439-40 (Tex. Crim. App. 1995), overruled on other
grounds by Roberts v. State, 273 S.W.3d 322 (Tex. Crim. App. 2008); Swain v. State, 181 S.W.3d
359, 367-68 (Tex. Crim. App. 2005); Estrada v. State, 313 S.W.3d 274, 302 (Tex. Crim. App. 2010).
16. Professors Dix and Schmolesky take the view that "[w]hether the rule as applied makes sense
as either a waiver or forfeiture rule is open to doubt." George E. Dix & John M. Schmolesky, 43A
Texas Practice: Criminal Practice and Procedure § 53:150, at 1174-75 (3rd ed. 2011). They
argue that, under most circumstances, "defense counsel's 'no objection' statement might well have
been intended by counsel to mean only that the defense had nothing beyond what had already been
presented and rejected." Id. at 1175. Today the appellant urges us to recognize just such an exception
to the rule. She argues that, while a defense counsel's naked statement of "no objection" when
evidence is proffered at trial will ordinarily operate to waive an objection previously preserved via an
earlier adverse ruling on a pretrial motion to suppress, this should not invariably be the case; and that
when it is apparent from the record that the trial court understood the "no objection" statement to mean
that the defendant had no additional objection to the evidence beyond that which was rejected pretrial,
the waiver principle should not control, and error is preserved.
17. See notes 10, 11 & 12, ante.
18. 264 S.W.3d 265, 267 (Tex. App.--San Antonio 2008, no pet.).
19. Id.
20. Id. at 267-68.
21. Id. at 268.
22. Id.
23. Id.
24. Id.
25. Id.
26. Id. at 268-69.
27. 268 S.W.3d 717 (Tex. App.--Corpus Christi 2008, pet. ref'd).
28. Id. at 721-24, 737.
29. Id. at 730.
30. Id.
31. Id.
32. See also Fierro v. State, 969 S.W.2d 51, 55 (Tex. App.--Austin 1998, no pet.) ("Taking
Fierro's statements in the context of the entire record, we conclude Fierro did not waive the alleged
error [which was preserved by adverse ruling on a pretrial motion to suppress] by initially uttering in
the presence of the jury that he had 'no objection' to the admissibility of the videotape."). Several
other courts of appeals have recognized, albeit in unpublished opinions, that a relaxation of the "no
objection" waiver rule might be appropriate under some circumstances, as in Bouyer and Shedden, but
they refused to relax it on the particular facts before them. See Robinson v. State, No. 06-09-00225-CR, 2012 WL 6518935 at *2 (Tex. App.--Texarkana 2012, delivered Dec. 13, 2012) (not designated
for publication) ("Some courts have found a limited exception to the general rule if the record
affirmatively shows that the trial court did not construe the 'no objection' statement as an intentional
relinquishment of the previous challenge."); Maldonado v. State, No. 05-09-00383-CR, 2011 WL
924352 at *2-3 (Tex. App.--Dallas, delivered March 18, 2011) (not designated for publication)
(noting the limited exception but finding no indication in the record that the trial court understood the
"no objection" statement to be anything other than an abandonment of the earlier-preserved error); 
Salazar v. State, No. 03-08-00164-CR, 2009 WL 3486411 at *2 (Tex. App.--Austin, delivered Oct.
29, 2009) (not designated for publication) (same).
33. See Lankston v. State, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992) ("[T]here are no technical
considerations or form of words to be used. Straightforward communication in plain English will
always suffice."); Clarke v. State, 270 S.W.3d 573, 580 (Tex. Crim. App. 2008) (quoting Lankston).
34. Lankston, supra, at 909.
35. See Zillender v. State, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977) ("[W]here the correct
ground of exclusion was obvious to the judge and opposing counsel, no waiver results from a general
or imprecise objection."); Lankston, supra, at 908 (quoting Zillender); Layton v. State, 280 S.W.3d
235, 239 (Tex. Crim. App. 2009) (same); Resendez v. State, 306 S.W.3d 308, 313 (Tex. Crim. App.
2009) ("When the correct ground for exclusion was obvious to the judge and opposing counsel, no
forfeiture results from a general or imprecise objection.") (citing Zillender); Clark v. State, 365
S.W.3d 333, 339 (Tex. Crim. App. 2012) (same).
36. In Zillender we observed:


 The generally acknowledged policies of requiring specific objections are two-fold. First, a specific objection is required to inform the trial judge of the basis of the
objection and afford him the opportunity to rule on it. [Footnote: A collateral but
important ramification of this function is to provide the trial court with an opportunity
to attempt to cure any harm resulting from the action giving rise to the objection. 
Coleman v. State, 481 S.W.2d 872 (Tex.Cr.App. 1972) and cases cited therein.] 
Second, a specific objection is required to afford opposing counsel an opportunity to
remove the objection or supply other testimony.


557 S.W.2d at 517. See also Clark, supra, at 339 (citing Zillender for the proposition that "[t]he two
main purposes of requiring a specific objection are to inform the trial judge of the basis of the objection
so that he has an opportunity to rule on it and to allow opposing counsel to remedy the error").
37. State v. Rosseau, 396 S.W.3d 550, 555 (Tex. Crim. App. 2013) ("Rather than focus on the
presence of magic language, a court should examine the record to determine whether the trial court
understood the basis of a defendant's request.").
38. "[T]he real issue is whether the 'no objection' statement creates a significant risk that the trial
judge will be caused to fail to revisit matters resolved earlier by a misperception created by the
statement that the defendant no longer seeks to prevail on the matter." Dix & Schmolesky, supra, §
53:150, at 1177.
39. Were we to hold instead that the "no objection" rule should apply categorically to bar appellate
review of the appellant's motion to suppress, we would have to confront a knotty question with respect
to the scope of that waiver that the court of appeals overlooked. By explicitly declaring that she had
"no objection" to some of the evidence that was the product of the detention she claims was unlawfully
prolonged, did the appellant also necessarily waive her ability to appeal the trial court's failure to
suppress all other evidence that was a product of that prolonged detention? Can it be said that, when
she abandoned any objection to the lab report and photographs of the marijuana that were contained
in State's Exhibits 1 through 9, the appellant also evinced an intention to abandon her previous
objection to any other evidence that the State might have proffered had the case proceeded to a trial? 
The appellant's motion to suppress was not limited to challenging the admissibility of "tangible
evidence" of the marijuana. It also expressly challenged the admissibility of "any testimony by the
officers of the Texas Department of Public Safety or any other law enforcement officers or others
concerning such evidence." May the appellant still argue on appeal that the trial court should have
suppressed any testimony from Officer Phoutthavong about events during the prolonged detention that
might have been necessary to establish a nexus between herself and the drugs--testimony that was
rendered unnecessary by the judicial confession upon which the trial court accepted her guilty plea? 
By declaring that the "no objection" waiver rule is not categorical, we render this question academic,
at least for purposes of this case.
40. Appellee's Brief at 10-11. The State has not argued, either in this Court or in the court of
appeals, that this boilerplate waiver of appeal should prevent the appellant from exercising her right
to appeal altogether. Nor did the court of appeals address this broader question sua sponte. Given this
Court's precedents, it seems unlikely that the facts of this case would support such an argument in any
event. See Ex parte De Leon, 400 S.W.3d 83, 89-90 (Tex. Crim. App. 2013) (given the evidence in
the record, the boilerplate waiver of appeal "was not a binding element of Applicant's plea
agreements" and "was not intended to override the trial court's permission to appeal"); Willis v. State,
121 S.W.3d 400, 403 (Tex. Crim. App. 2003) ("The record demonstrates that the failure to cross out
the language waiving appeal in the plea forms was an oversight."); Alzarka v. State, 90 S.W.3d 321,
323-24 (Tex. Crim. App. 2002) ("the language about waiving appeal in the plea forms was an
oversight" and "the record . . . rebuts any presumption raised by the terms of the boiler-plate plea form
signed by appellant and reflects that appellant did not waive appeal").
41. Willis, supra, at 401.
42. Id. at 402.
43. Id. at 403.
44. Id. See also De Leon, supra, at 89.
45. Willis, supra, at 403.
46. See note 6, ante.
47. See note 8, ante.
48. Willis, supra, at 402.
49. Alzarka, supra, at 324.